UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON MORRIS,

    Plaintiff,

v.                                    Case No. 8:21-cv-2280-VMC-CPT

CITY OF LAKELAND, FLORIDA,
JEREMY WILLIAMS, individually,
and ALEXANDER COOKS,
individually,

    Defendants.

_____/

**ORDER**

    This matter comes before the Court upon consideration of Defendants City of Lakeland, Florida, Jeremy Williams, and Alexander Cooks' Motion for Summary Judgment (Doc. # 50), filed on November 14, 2022. Plaintiff Brandon Morris responded on December 5, 2022. (Doc. # 51). For the reasons that follow, the Motion is granted.

I.   **Background**

    At approximately 1:30 AM on October 27, 2017, Brianna Morris heard a noise inside her building at 1732 Olive Street in Lakeland, Florida. (Doc. # 50-3 at 9:9-17, 13:9-14:12, 30:1-16). The building was both her dwelling and a warehouse for her family's ice cream truck business. (Doc. # 50-4 at 9:1-16). Ms. Morris was upstairs with her dog when she heard

1

the noise. (Doc. # 50-3 at 9:8-15). Ms. Morris lived in the building with her brother, Brandon Morris. (Id. at 9:8-9). After she heard the noise, Ms. Morris called her brother, told him she had heard a noise, and asked him if he was home. (Id. at 9:15-16). Mr. Morris said that he was not home. (Id.).

Ms. Morris then ran out of the building with her dog and called 911, fearing that someone was attempting to break into the dwelling. (Id. at 9:18-24). During her deposition, she testified that the dwelling was "in a very bad part of the area" and that she knew individuals had previously trespassed in the warehouse. (Id. at 9:12-13, 12:5-13). She told the 911 dispatcher that she believed an unknown individual was in the warehouse and indicated that she resided on the premises. (Doc. # 50-2 at 1-2). Shortly after she relayed this information to the dispatcher, Ms. Morris's phone died. (Id. at 2; Doc. # 50-3 at 17:2-3).

As it transpired, Mr. Morris was "joking around" when he told his sister that he was not home. (Doc. # 50-4 at 27:22-24). In fact, he was in another room, "fiddling with" a bench press that made a "metal clanking" noise when he moved it. (Id. at 24:5-13). He did not expect that his sister would "take it to the extreme" and call 911. (Id. at 24:2-4). He tried many times to call Ms. Morris to let her know that he

was home; however, she did not pick up because her phone was dead. (Id. at 24:16-24). He remained inside the dwelling waiting for Ms. Morris to return or call him back. (Id. at 24:20-24).

Officers from the Lakeland Police Department arrived on the scene around 1:35 AM. After leaving the dwelling, Ms. Morris walked around the block (Doc. # 50-3 at 16:14-16), and ultimately met with Officer Colton Thompson on the street approximately two buildings down from her dwelling. (Doc. # 50-7 at ¶ 7). Officer Thompson stated that Ms. Morris told him (1) she was sleeping in the business, (2) she heard an unknown individual attempting to break into the building, (3) no one else was supposed to be in the building, and (4) she became afraid upon hearing the noise and ran out of the building. (Id.). Ms. Morris testified that she also told officers that her brother was inside after she saw his car parked outside the building. (Doc. # 50-3 at 10:7-10; 15:1-5; 17:21-24; 31:1-4). No officer testified that they heard this information (Doc. # 50-5 at 86:16-20; Doc. # 50-6 at 60:21-25; Doc. # 50-7 at ¶ 7), and the Detailed History for Police Event does not indicate that she relayed this information to the 911 dispatcher or the responding officers. (Doc. # 50-2 at 1-4).

Officer Thompson relayed the information from Ms. Morris over the radio to Officers Cooks and Williams. (Doc. # 50-7 at ¶ 8). Neither Officer Cooks nor Officer Williams spoke directly to Ms. Morris. (Doc. # 50-5 at 86:16-20; Doc. # 50-6 at 60:21-25). Officer Williams was a K-9 officer and responded to the scene with his trained K-9, Hyde. (Doc. # 50-5 at 11:23-12:2; 12:14-13:14, 14:2-15:7). Officers Cooks and Williams approached the front door of the dwelling and found that the door was locked. (Id. at 47:13-48:3). The officers announced themselves as police and issued a verbal order to open the door. (Doc. # 50-3 at 18:14-18; Doc. # 50-6 at 30:813, 43:21-44:3). While waiting at the door, Officer Cooks saw someone "sneaking around" inside the dwelling. (Doc. # 50-6 at 34:23-25).

Soon after police arrived at the door, Mr. Morris unlocked and opened the door. (Doc. # 50-3 at 22:5-10; Doc. # 50-4 at 25:17-19, 29:7-17; Doc. # 50-5 at 48:22-49:1; Doc. # 50-6 at 26:4-6, 74:4-8). Officer Williams ordered Mr. Morris to "Stop. Let me see your hands." (Doc. # 50-5 at 49:2-6). Mr. Morris stated that he came to the door to "[try] to notify myself, like, 'Hey, I'm coming out there.'" (Doc. # 50-4 at 26:11-13). He recalled seeing a dog, an officer with a rifle, and other officers upon opening the door. (Id. at 29:18-25;

30:9-12). Mr. Morris then closed the door to a point that only his face was visible. (Id. at 30:9-23). Mr. Morris stated that he partially shut the door because he feared being attacked by the dog. (Id. at 27:3-4). When Officer Williams observed Mr. Morris beginning to shut the door, he believed Mr. Morris was a burglar attempting to evade arrest. See (Doc. # 50-5 at 100:20-101:1 ("So as far as I knew, I knew we had an officer in the back. He was trying to – there's some suspect in this place trying to find a way out.")). He further explained that he was concerned Mr. Morris would retreat into the dwelling and ambush the police, either with a weapon on his person or with one he found inside. (Id. at 111:10-18).

As Mr. Morris closed the door, Officer Williams kicked the door open and released Hyde. (Id. at 37:16-38:11; Doc. # 50-4 at 31:13-20, 32:17-21; Doc. # 50-6 at 33:24-34:3). Hyde bit and held Mr. Morris's left thigh, causing Mr. Morris to fall to the floor. (Doc. # 50-4 at 32:22-33:13; Doc. # 50-5 at 39:11-13). Officers Williams and Cooks attempted to handcuff Mr. Morris. (Doc. # 50-5 at 83:1-5). They commanded Mr. Morris to put his hands behind his back; however, both officers testified that Mr. Morris did not follow this command. (Id. at 63:19-25, 66:21-67:6, 67:17-23, 115:3-4; Doc. # 50-6 at 41:1-15, 48:14-21). Mr. Morris does not dispute

this. Instead, Mr. Morris recalled trying to tell the officers that he lived in the dwelling and was not a burglar while Hyde was biting him. (Doc. # 50-4 at 31:22-32:9).

Mr. Morris claims that Officer Williams struck his face multiple times before handcuffing him. (Id. at 31:22-32:14, 35:14-36:8). Officer Williams denies ever striking Mr. Morris. (Doc. # 50-5 at 67:10-68:7). Officer Cooks recalled striking Mr. Morris's torso with his flashlight approximately two times in order to force Mr. Morris to comply with his commands. (Doc. # 50-6 at 51:17-53:3). The officers handcuffed Mr. Morris and arrested him for resisting an officer without violence. (Doc. # 50-5 at 91:20-92:4, 114:14-17). After Mr. Morris was handcuffed, Officer Williams immediately ordered Hyde to release, which he did. (Id. at 6:7-21, 8:5-11, 9:17-11:22, 84:4-21; Doc. # 50-4 at 34:22-24, 40:15-18, 41:7-9). The encounter lasted less than two minutes. (Doc. # 50-2 at 4). The charge against Mr. Morris was ultimately dropped before the case proceeded to trial. (Doc. # 50-4 at 48:19-49:1).

Mr. Morris was transported to Lakeland Regional Health approximately ten minutes after his arrest. (Doc. # 50-2 at 4). The dog bite did not require surgery or stitches, though the wound required additional attention when Mr. Morris was

transferred to the jail infirmary the next day. (Doc. # 50-4 at 38:13-39:15). Mr. Morris also had a cut below his left eye, but it did not require any treatment. (Id. at 59:9-22).

Mr. Morris initiated this action on September 27, 2021. In his amended complaint, he asserts common law battery and false arrest claims against the City of Lakeland for the actions of Officer Williams and Officer Cooks (Count I), a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment against Officer Williams (Count II), and a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment against Officer Cooks (Count III). (Doc. # 24). On November 14, 2022, Defendants moved for summary judgment on all claims. (Doc. # 50). Mr. Morris responded (Doc. # 51), and the Motion is ripe for review.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344

F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

III. **<u>Analysis</u>**

    A.   **<u>Counts II and III – Section 1983 False Arrest Claims Against Officer Williams and Officer Cooks</u>**

Mr. Morris alleges that Officers Williams and Cooks violated his rights under the Fourth Amendment by falsely arresting him "without arguable probable cause." (Doc. # 24 at ¶¶ 43, 47). Mr. Morris contends that his arrest for resisting an officer without violence, a misdemeanor, lacked probable cause because he did not close the door on the officers and was only attempting to tell the officers that he lived in the dwelling. (Doc. # 51 at 18). In their Motion, the Defendants argue that they are entitled to summary judgment on the excessive force claims in Counts II and III

because Officer Williams had probable cause to arrest Mr.
Morris, as he disobeyed several commands, attempted to shut
the front door upon seeing the officers, and resisted the
officers' attempts to handcuff him. (Doc. # 50 at 10-13).

The Fourth Amendment protects individuals from
unreasonable search and seizure. U.S. Const. amend. IV. While
a warrantless arrest without probable cause violates the
Constitution and provides a basis for a 42 U.S.C. § 1983
claim, the existence of probable cause at the time of arrest
constitutes an absolute bar to a 42 U.S.C. § 1983 claim for
false arrest. Whittington v. Town of Surfside, 490 F. Supp.
2d 1239, 1249 (S.D. Fla. 2007), aff'd in part, 269 F. App'x
918 (11th Cir. 2008) (quoting Marx v. Gumbinner, 905 F.2d
1503, 1505-6 (11th Cir. 1990)). "For probable cause to exist,
. . . an arrest must be objectively reasonable based on the
totality of the circumstances." Wood v. Kesler, 323 F.3d 872,
878 (11th Cir. 2003). "This standard is met when the facts
and circumstances within the officer's knowledge, of which he
or she has reasonably trustworthy information, would cause a
prudent person to believe, under the circumstances shown,
that the suspect has committed, is committing, or is about to
commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th
Cir.1998). "Although probable cause requires more than

suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Wood, 323 F.3d at 878.

Officer Williams asserts that he had probable cause to arrest Mr. Morris for violating Florida Statutes Section 843.02. The statute provides, in pertinent part: "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree[.]" Fla. Stat. § 843.02. "[T]o support a conviction for obstruction without violence [under § 843.02], the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla. 2009). In the summary judgment context, the Court's "focus is whether a reasonable jury could find that evidence of either element was lacking at the scene of the incident." Andrade v. Marceno, No. 2:19-cv-887-JES-MRM, 2023 WL 157087, at *6 (M.D. Fla. Jan. 11, 2023) (quoting Baxter v. Roberts, 54 F.4th 1241, 1266 (11th Cir. 2022)). In order for the Court to find that

the officers were lawfully executing a legal duty, it looks
to the following:

> [T]he conduct of the officer must be consistent
> with the Fourth Amendment and any other relevant
> requirements of law. This inquiry focuses on the
> specific point in time when the resistance occurred
> so that the essential inquiry is whether the
> officer was lawfully executing a legal duty when
> the obstructing conduct occurred. Ultimately, if an
> arrest is not lawful, then a defendant cannot be
> guilty of resisting it.

Baxter, 54 F.4th at 1267.

Officer Williams and Officer Cooks were engaged in the
lawful execution of a legal duty when they encountered Mr.
Morris. The officers were responding to a dispatch call about
a burglary in progress at a residence. (Doc. # 50-2 at 1-2).
Mr. Morris argues that the officers knew he was a resident of
the building because Ms. Morris told officers that if they
saw his car, then her brother was home. Doc. # 50-3 at 10:7-
10; 15:1-5; 17:21-24; 31:1-4).  There is no indication from
the record that the arresting officers, Officer Williams and
Officer Cooks, knew she said this. Officer Thompson, who
acknowledged that he spoke to Ms. Morris, indicated that he
did not hear this information. (Doc. # 50-7 at ¶ 7). Further,
the Detailed History for Police Event does not indicate that
she gave this information to the 911 dispatcher or the
responding officers. (Doc. # 50-2 at 1-4). Even assuming Ms.

Morris told Officer Thompson that her brother was home if his car was there, this still does not mean that Officers Williams and Cooks knew the person at the door was a resident of the building. Neither Officer Cooks nor Officer Williams spoke directly to Ms. Morris. (Doc. # 50-5 at 86:16-20; Doc. # 50-6 at 60:21-25). After speaking to Ms. Morris, Officer Thompson relayed over the radio to Officers Cooks and Williams:

> That [Ms. Morris] had been sleeping inside the business; that she had heard someone attempting to break into the south entrance of the building but did not see who it was; that nobody else was supposed to be in the business at the time except for her; that she became afraid; that she exited through the north door and called 911; and that she heard someone enter the building as she was leaving.

(Doc. # 50-7 at ¶ 8). Based on this information, Officers Williams and Cooks did not know that Mr. Morris was inside the building.

As officers investigating an emergency call about a crime, Officers Williams and Cooks were performing a legal duty. See Walker v. City of Orlando, Fla., No. 6:07-cv-651-MSS-DAB, 2009 WL 10698032, at *8 (M.D. Fla. Apr. 24, 2009) (finding a police officer investigating an emergency call was performing a legal duty for the purposes of Section 843.02).

The question before the Court is therefore whether Mr. Morris, "by his words, conduct, or a combination thereof . .

13

. obstruct[ed] or resist[ed] . . . that lawful duty." <u>C.E.L.</u>, 24 So. 3d at 1186. The Court finds that he did.

According to the Defendants, Mr. Morris violated Section 843.02 by failing to follow the officers' commands, shutting the door, and resisting being handcuffed. Officer Williams and Officer Cooks announced themselves as police and issued a verbal order to open the door. (Doc. # 50-3 at 18:14-18; Doc. # 50-6 at 30:813, 43:21-44:3). While Mr. Morris initially opened the door to speak to the officers, he admits that he began closing the door so only his face would be visible. (Doc. # 50 at 27:3-4). This action alone constituted resistance to the officers' orders as they conducted a lawful investigation. <u>See</u> <u>Bassett v. State</u>, 941 So.2d 440-41 (Fla. 4th DCA 2006) (affirming conviction for resisting arrest without violence where defendant first opened door but slammed door shut as officer attempted to enter); <u>In Interest of J.B.</u>, 621 So.2d 489, 490-91 (Fla. 4th DCA 1993) (affirming conviction for resisting arrest without violence where defendant slammed door shut, locked it, and refused to open it in front of officer).

Mr. Morris also resisted arrest in violation of Section 843.02 when he failed to put his hands behind his back while the officers were attempting to handcuff him. Officer

Williams and Officer Cooks commanded Mr. Morris to put his hands behind his back; however, he did not follow this command. (Doc. # 50-5 at 63:19-25, 66:21-67:6, 67:17-23, 115:3-4; Doc. # 50-6 at 41:1-15, 48:14-21). "[F]ailing to present one's hands for handcuffing is sufficient evidence to establish probable cause for the charge of resisting arrest without violence." Williams v. City of Daytona Beach, No. 6:04-cv-1879, 2006 WL 354635 at *11 (M.D. Fla. Feb. 15, 2006) (citing Savage v. State, 494 So.2d 274, 277 (Fla. 2d DCA 1986)).

Based on Mr. Morris's actions, Officers Williams and Cooks had probable cause to arrest Mr. Morris for resisting arrest without violence. Because Officer Williams and Officer Cooks had probable cause to arrest Mr. Morris for violation of Section 843.02, summary judgment is proper as to Mr. Morris's unlawful arrest claims in Counts II and III.

### B. <u>Count II – Excessive Force Claim Against Officer Williams</u>

Mr. Morris alleges that Officer Cooks violated his rights under the Fourth Amendment by inflicting excessive force personally and through the use of his K-9, Hyde. (Doc. # 24 at ¶ 44). He argues that Officer Williams' decision to release Hyde to bite and hold his leg was unreasonable given

that Mr. Morris was not burglarizing the residence. (Doc. #
51 at 10). He also claims that Officer Williams struck his
face several times while attempting to handcuff him. (Id.).
The Defendants argue that the use of Hyde was justified, as
Officer Williams was concerned Mr. Morris was attempting to
flee. (Doc. # 50 at 14-16). Additionally, they argue that,
even if Officer Williams struck Mr. Morris in the head, he
still did not use excessive force because the strikes were,
at most, a de minimis application of force. (Id. at 16-19).
Because the Court finds that the use of force was objectively
reasonable, it need not determine whether the use of force
was de minimis.

     "The Fourth Amendment's freedom from unreasonable
searches and seizures encompasses the plain right to be free
from the use of excessive force in the course of an arrest."
Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). An
officer's use of force must be objectively reasonable under
the circumstances, and "must be judged from the perspective
of a reasonable officer on the scene, rather than with the
20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386,
396 (1989). To determine whether an officer used excessive
force, the Court must balance "the nature and quality of the
intrusion on the individual's Fourth Amendment interests

16

against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotations omitted).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396 (internal citations omitted). Accordingly, courts evaluate "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Mr. Morris asserts that Officer Williams used unreasonable force when he allegedly hit Mr. Morris multiple times in the face and when he released Hyde and allowed the dog to bite his leg. (Doc. # 51 at 13-16). Officer Williams asserts that he did not strike Mr. Morris and that, even if he did, such force was reasonable during the course of arresting Mr. Morris. (Doc. # 50 at 16-18). Officer Williams additionally maintains that releasing Hyde was reasonable, as he believed Mr. Morris was attempting to flee. (Id. at 14-16).

As an initial matter, Officer Williams asserts that he did not strike Mr. Morris. (Doc. 50-5 at 67:10-68:7). Mr. Morris testified that someone struck him in the face or head before he was handcuffed and assumed that person was Officer Williams. (Doc. # 50-4 at 31:22-32:14, 35:14-36:8). Even assuming, however, that Officer Williams did strike Mr. Morris in the head, such use of force was objectively reasonable under the circumstances.

Here, Officer Williams's use of force was objectively reasonable. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003). The strikes to his face occurred before Mr. Morris was handcuffed and while he was resisting arrest. (Doc. # 50-4 at 31:22-32:14, 35:14-36:8). The alleged strikes were in the course of affecting a lawful arrest. Further, the cut on his face did not require any notable treatment. (Id. at 59:9-22). The amount of force Mr. Morris submits Officer Williams used is on par with what the Eleventh Circuit has sustained previously, particularly in cases where suspects resisted arrest. See Manners v. Cannella, 891 F.3d 959, 974 (11th Cir. 2018) (holding the officers' use of force was objectively

reasonable where officers punched and tased suspect where suspect was resisting arrest); Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (finding force was objectively reasonable where an officer grabbed the plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him," causing bruises that did not require medical treatment); Buckley v. Haddock, 292 F. App'x 791, 796 (11th Cir. 2008) (determining use of force was objectively reasonably where officer used taser three times while trying to subdue suspect resisting arrest).

Second, Officer Williams did not inflict excessive force through his K-9, Hyde. Officer Williams stated that he released Hyde after Mr. Morris started to close the door because he suspected that Mr. Morris was a burglar attempting to flee the scene. (Doc. # 50-5 at 100:20-101:1; 111:6-112:3). Hyde bit Mr. Morris's left leg to prevent him from evading arrest. (Id.). The bite wounds did not require surgery or stitches and did not cause lasting damage. (Doc. # 50-4 at 38:13-39:15).

Mr. Morris cites Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000), in support of his contention that

the use of a canine constituted excessive force. (Doc. # 51 at 14-15). In Priester, the plaintiff, who was suspected of stealing $20 in snacks, immediately surrendered to police, did not attempt to flee or resist arrest, and did not pose a threat of bodily harm to anyone. 208 F.3d at 927. These facts are inapposite to this case. Here, police suspected Mr. Morris of committing a much more serious crime, burglary, and of attempting to flee. (Doc. # 50-5 at 100:20-101:1). Further, Officer Williams noted that he was concerned Mr. Morris would retreat into the dwelling and ambush the police, either with a weapon on his person or with one he found inside. (Doc. # 50-5 at 111:10-18). Mr. Morris also refused to follow the officers' commands. Therefore, Priester is distinguishable from the case at bar.

Rather, the Eleventh Circuit has determined that the use of a canine is objectively reasonable where the individual was suspected of committing a serious crime, attempted to flee, or resisted arrest. See Crenshaw v. Lister, 556 F.3d 1283, 1293 (11th Cir. 2009) (determining use of canine was objectively reasonable where officer believed suspect was potentially armed and dangerous and fled from police, despite the fact that the suspect sustained serious injuries); Anderson on behalf of MA v. Vazquez, 813 F. App'x 358, 361

(11th Cir. 2020) (finding use of canine objectively
reasonable where officer observed three suspects committing
vehicular burglary and suspects disobeyed officers' commands
and fled to avoid arrest).

Because Officer Williams' use of force was objectively
reasonable under circumstances and, therefore, not excessive,
summary judgment is granted as to Mr. Morris's excessive force
claims in Count II.

C.    **Count III – Excessive Force Claim Against Officer
      Cooks**

Mr. Morris alleges that Officer Cooks violated his
rights under the Fourth Amendment by "personally inflicting
excessive force." (Doc. # 24 at ¶ 48). Officer Cooks testified
that he twice struck Mr. Morris in the torso with his
flashlight. (Doc. # 50-6 at 51:17-53:3). The Defendants argue
that, like Officer Williams' alleged use of force, Officer
Cooks' use of force was also objectively reasonable. (Doc. #
50 at 16-18).

The Court agrees that Officer Cooks' use of force was
objectively reasonable. While attempting to handcuff Mr.
Morris, Officer Cooks hit him twice in the torso to force him
to comply with the officers' commands to put his hands behind
his back and stop resisting. (Id.). Mr. Morris relies on

Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008) to demonstrate that Officer Cooks' use of force was excessive. (Doc. # 51 at 13-14). However, his reliance is misplaced. In Hadley, the Eleventh Circuit ruled that an officer was not entitled to qualified immunity where he punched a suspect in the stomach when the suspect was handcuffed and not resisting arrest. 526 F.3d at 1330. Here, in contrast, Mr. Morris was not yet handcuffed and was not following Officer Cooks' orders to put his hands behind his back. (Doc. # 50-4 at 31:22-32:9; Doc. # 50-6 at 51:17-53:3); see also Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015) ("[F]orce applied while a suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive."). Officer Cooks' use of force was objectively reasonable under the circumstances. See Leach v. Hoffman, No. 8:19-CV-330-CEH-CPT, 2022 WL 900465, at *10 (M.D. Fla. Mar. 28, 2022) (finding officer's use of force did not violate plaintiff's Fourth Amendment rights where officer used taser on plaintiff who was resisting arrest while already handcuffed).

Summary judgment is therefore granted as to Mr. Morris's excessive force claims in Count III.

D.    **Count I – Common Law Battery and False Arrest Claims**

Mr. Morris also brings common law tort claims against the City of Lakeland for false arrest and battery. (Doc. # 24 at ¶¶ 37-40). First, he argues that the City is liable for false arrest because there was no probable cause to arrest him. (Id. at ¶ 37-38). Mr. Morris brings suit against the City, instead of the individual officers, pursuant to Section 768.28(9)(a), which states

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, . . . , unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.29(9)(a).

Under Florida law, false arrest is "the unlawful restraint of a person against that person's will." Willingham v. City of Orlando, 929 So.2d 43, 48 (Fla. 5th DCA 2006). "Probable cause is an affirmative defense to a false arrest claim." Miami-Dade Cnty. v. Asad, 78 So. 3d 660, 670 (Fla. 3d DCA 2012); see Rankin, 133 F.3d at 1435 ("[P]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest[.]"). And "the standard for determining whether probable cause exists is the same under Florida and

federal law." Rankin, 133 F.3d at 1435. As the Court has already determined that Officer Williams and Officer Cooks had probable cause to arrest Mr. Morris for resisting arrest without violence, summary judgment is granted as to Mr. Morris's false arrest claim in Count I.

Mr. Morris also argues that Officer Williams and Officer Cooks committed a battery through their use of force during his arrest. (Doc. # 24 at ¶ 40). The claim relies on the same actions as his Fourth Amendment excessive force claims. (Id. at ¶ 39). Under Florida law, "[a] battery claim [against a law enforcement officer] for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." Id. Courts assess state-law battery claims regarding excessive force under a "similar standard" to that governing Fourth Amendment excessive force claims. Sullivan v. City of Pembroke Pines, 161 F. App'x 906, 911 (11th Cir. 2006).

Here, as discussed with respect to Mr. Morris's constitutional excessive force claims, the officers' use of force was reasonable under the circumstances. See Cutino v.

Untch, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) ("[T]o the extent [Plaintiff] alleges that the Officers assaulted him during the same encounter, that claim is likewise foreclosed since any threat of force was reasonable."). Therefore, summary judgment is granted on Count I as to Mr. Morris's battery claim.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants City of Lakeland, Florida, Jeremy Williams, and Alexander Cooks' Motion for Summary Judgment (Doc. # 50) is **GRANTED.**

(2)   Summary judgment is granted in favor of City of Lakeland, Florida, Jeremy Williams, and Alexander Cooks on all counts of the amended complaint.

(3)   The Clerk is directed to enter judgment accordingly and, thereafter, **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of March, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE